IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THRIFT AUTO REPAIR, INC.,

   Plaintiff,

    v.

U.S. BANCORP, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:07-CV-1051-TWT

ORDER

This is a class action suit that was removed to this Court from the Superior Court of Fulton County. It is before the Court on the Plaintiff's Motion to Remand [Doc. 11]. For the reasons set forth below, the Plaintiff's motion is GRANTED.

I. BACKGROUND

The Plaintiff, Thrift Auto Repair, Inc., is a Georgia corporation that does business in Liberty County, Georgia. In October 2001, the Plaintiff entered into an equipment lease agreement with U.S. Bancorp and its affiliates. This suit arises out of this and subsequent lease agreements. The Plaintiff filed this suit in the Superior Court of Fulton County on behalf of itself and unnamed Georgia class members. The Plaintiff seeks damages for "unfair, unlawful, fraudulent, wrongful and deceptive practice of adding and/or force-placing the fees, charges and taxes on Plaintiff and

class members' accounts." (Compl. ¶ 16). The Plaintiff is challenging Bancorp's allegedly bogus charge of a "property damage surcharge," ("P.D.S."), which the Plaintiff claims is an improper insurance charge and a "profit enhancer." Id. The Plaintiff claims that the P.D.S. is "not rationally related to any risk" and that the Defendants misrepresented this charge as a necessary one. (Compl. ¶ 18). The Plaintiff further alleges that the Defendants charged "unnecessary and excessive" taxes, and that the Defendants failed to "remit such taxes to the appropriate governmental authorities." (Compl. ¶ 20). Furthermore, the Plaintiff alleges that the Defendants charged late fees in excess of 15% of the monthly payments in violation of the lease agreements. (Compl. ¶ 21).

The Plaintiff seeks to recover under various theories related to a breach of the agreements. Significantly, the Plaintiff included an *ad damnum* clause in the Complaint, expressly stating:

> TOTAL DAMAGES FOR THE ENTIRE CLASS, INCLUDING EQUITABLE RELIEF AND MONETARY DAMAGES, [TO] $4,995,000 OR LESS, EXCLUDING INTEREST AND COSTS AND UNDER NO CIRCUMSTANCES WILL THE TOTAL DAMAGES... EXCEED $4,995,000, EXCLUDING INTEREST AND COSTS.

(Compl. ¶ 23). The Defendants filed a notice of filing removal in the Superior Court of Fulton County on diversity grounds. In support of removal jurisdiction, the Defendants filed the affidavit of Rebecca Lanoue, a "Director of Portfolio" for

Defendant U.S. Bancorp Manifest Funding Services. Ms. Lanoue claims that damages at issue in this case exceed $9,125,000. (Lanoue Aff. ¶ 14). The Plaintiff now moves to remand.

## II. STANDARD OF REVIEW

At issue in this case is the application of 28 U.S.C. § 1332(d), which provides for diversity jurisdiction in certain class actions in which the amount in controversy exceeds $5,000,000. This provision and its corresponding removal provision, 28 U.S.C. § 1446, were enacted pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

In the Eleventh Circuit, removal statutes are to be interpreted narrowly, with any doubts construed against removal. See Williams v. AFC Enter., Inc., 389 F.3d 1185, 1189 (11th Cir. 2004); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994). Moreover, the removing party bears the burden of demonstrating federal jurisdiction. Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005); Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1373 (11th Cir. 1998). The Eleventh Circuit has recently reiterated that the removing party bears this burden even in the context of CAFA, despite legislative history to the contrary. See Lowery v. Alabama Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007); Miedema v. Maytag Corp., 450 F.3d 1322, 1329-30 (11th Cir. 2006) ("[G]eneralized appeals to CAFA's

'overriding purpose' are unavailing in the face of CAFA's silence on the traditional, well-established rules that govern the placement of the burden of proof and the resolution of doubts in favor of remand.").

When the damages sought by a plaintiff are unspecified in the complaint, the removing party must establish that federal jurisdiction is appropriate by a preponderance of the evidence. Lowery, 483 F.3d at 1208. This is an odd rule to apply because, as discussed below, the Court is prohibited from considering any evidence. The Eleventh Circuit has acknowledged that "our precedent compels us to continue forcing this square peg into a round hole." Id. at 1211. However, as here, when a plaintiff asserts a specific claim in an *ad damnum* clause for less than the jurisdictional amount, a defendant must satisfy a higher burden of proof, which the Eleventh Circuit has characterized as the "legal certainty" test. Burns, 31 F.3d at 1097. In theory, this heightened standard is not insurmountable; a defendant could properly remove if "he showed that, if plaintiff prevails on liability, an award below the jurisdictional amount would be outside the range of permissible awards because the case is clearly worth more than [the jurisdictional amount]." Id. at 1096.

The procedure for removal of cases generally as well as mass actions is set forth in 28 U.S.C. § 1446. See Lowery, 483 F.3d at 1212. The timing of removal depends upon whether it is based upon an initial pleading or because of an amended pleading,

motion, order, or "other paper." Lowery, 483 F.3d at 1212. Generally, "under § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff - be it the initial complaint or a later received paper - and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Lowery, 483 F.3d at 1213. "In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed - i.e., the notice of removal and accompanying documents." Id. at 1213-14. "When a plaintiff seeks unliquidated damages and does not make a specific demand, therefore, the factual information establishing the jurisdictional amount must come from the plaintiff." Id. at 1215, n.66. "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." Id. at 1214. In other words, the Court looks only to the pleadings and may not consider any evidence in deciding whether the preponderance of the evidence standard has been satisfied.

### III. DISCUSSION

In this case, the Plaintiff claims that removal was improper under CAFA because its *ad damnum* clause limits damages to $4,995,000. The Plaintiff argues that Lowery requires that any evidence relied upon by the Defendants must be received

from the Plaintiff.  Because the Defendants' only evidence for removal, the Plaintiff argues, is an affidavit supplied by one of the Defendants' employees, the Defendants have in effect supplied no evidence at all.  (See Reply Br. in Supp. of Pl.'s Mot. to Remand, at 2).  The Defendants counter that the Court is "required" to consider affidavits on the issue of jurisdictional amounts created by its own employees.  (See Defs.' Br. in Opp'n to Pl.'s Mot. to Remand, at 11).  The Defendants' foundation for this view stems largely from the Eleventh Circuit's analysis last year in Miedema v. Maytag Corp., 450 F.3d 1322 (11th Cir. 2006).

In Miedema, a consumer brought a class action claim against Maytag for damages stemming from the defective manufacture of ranges and ovens.  Id. at 1324.  The Miedema complaint did not specify the amount of damages sought on behalf of the class.  Id. at 1330.  Maytag removed to federal court under CAFA, on the basis of a declaration by one of its information analysts.  Id. at 1325.  The analyst declared that the amount in controversy in the class action suit exceeded the $5,000,000 jurisdictional hurdle by over $900,000.  Id.  This figure was reached by simply discerning the number of appliances sold in Florida during the times specified in the lawsuit, and multiplying it by the retail price of the ranges and ovens.  Id.  The district court found, and the Eleventh Circuit agreed, that this analysis was faulty because the complaint did not allege that every single range and oven sold during the time in

question was actually faulty.  Id. at 1331.  As such, Maytag could not meet its burden of showing by a preponderance of the evidence that the amount in controversy exceeded $5,000,000.  Id.

The Defendants cite Miedema not to show the difficulty in meeting a preponderance of the evidence standard but rather to argue that a district court is required to examine evidence prepared and presented by a defendant in removal actions.  (See Defs.' Br. in Opp'n to Pl.'s Mot. to Remand, at 9-11).  However, Lowery directly casts doubt on this argument:

> [O]ur reading of §§ 1446(b) and 1447(c) does not conflict with our recent decision in [Miedema]  In Miedema, the application of § 1446(b) was not before the court.  *The district court in Miedema had considered evidence that would likely fall outside the constraints of § 1446(b)*, but we concluded that, even if all the evidence the district court looked to could properly be considered, the defendants had failed to carry the burden.  Because the evidence was insufficient to establish jurisdiction, we never examined § 1446(b) or the propriety of the court's consideration of this evidence.

Lowery, 483 F.3d at 1215 n.65 (citations omitted and emphasis added).  Thus, it is improbable that the evidence submitted by the Defendants would not "fall outside the constraints of § 1446(b)."  Here, as in Miedema, the Defendants provided as its evidence for removal a statement by one of its own employees.  In her affidavit, Rebecca Lanoue, a "Director of Portfolio" for U.S. Bancorp Manifest Funding Services, provided the amount of property damage surcharges, late fees, processing

fees, property taxes, and sales taxes that the Defendants charged or received from the potential class members. The only information the Plaintiff gave to the Defendants was the types of charges, fees, and taxes in dispute; the Defendants supplied all the monetary figures on their own. Following Lowery, the Court may not consider this type of evidence.

The Defendants next argue that this case falls within the "contract exception" described in a Lowery footnote. Under Lowery, a defendant may "introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff." Lowery, 483 F.3d at 1215 n.66. Because expectation damages are the default measure of damages, "a court may look to the contract and determine what those damages would be." Id. In this case, there was a contract in the form of an "Equipment Lease Agreement." The Plaintiff even filed a claim for breach of contract. (See Compl. ¶¶ 34-36). However, this is not the kind of case that lends itself to a fair approximation of the measure of expectation damages such as a traditional contract case. As the Plaintiff notes, the contract does not specify the amounts of the allegedly improper fees, charges, and taxes, and "[t]he only amount that can be deduced from the agreement is the late fee which is 15% of the payment which is late." (See Reply Br. in Supp. of Pl.'s Mot. to Remand, at 6). It is simply not possible for the Court to "look to the contract and determine what

those damages would be." Lowery, 483 F.3d at 1215 n.66.  Thus, the Defendants' view of the contract exception - that a defendant may introduce its own evidence in support of removal in any case involving a contract in any way - is much broader than the Eleventh Circuit intended.  Ultimately the ability of the Defendants to introduce their own evidence in this case is academic.  As discussed more fully below, the potential damages listed by the Defendants fail to satisfactorily delineate an accurate measure of damages under the legal certainty standard.

Assuming that Lowery allows consideration of such a statement provided by the Defendants, the Defendants' evidence succumbs to similar shortcomings of the statement given in Miedema.  Ms. Lanoue's affidavit simply stated the "total amount collected by Manifest for property damage surcharges, processing (origination) fees and late fees, for Georgia customers from October 2001 through March 2007."  (Lanoue Aff. ¶ 10).  This total amount exceeds $4,875,000.  Ms. Lanoue also stated that her "best estimate of sales taxes collected from Manifest customers in Georgia for the years 2003-2006 is an amount in excess of $2,900,000" and that her "best estimate of personal property taxes collected from Manifest customers in Georgia for the years 2002-2006 is an amount in excess of $1,350,000."  (Lanoue Aff. ¶ 12-13).  The sum of these taxes and charges is over $9,125,000.

However, like the defendant's statement in <u>Miedema</u> which assumed that all ranges and ovens sold would be at issue (and not just the ones that were defective), the Defendants' affidavit is too sweeping in its calculations. Ms. Lanoue's first category of $4,875,000 is comprised of property damage surcharges, late fees, and processing fees. While the Plaintiff alleges that the "entire scheme and artifice regarding 'P.D.S.'" was improper, the Plaintiff claims that the late fees were excessive "since the charges exceed 15% of the monthly payment [set forth in the contract]." (Compl. ¶¶ 19, 21). Ms. Lanoue's affidavit does not clarify how much of the $4,875,000 is comprised of property damage surcharges and how much is comprised of the late fees. Further, the affidavit does not clarify which late fees exceeded the 15% of the monthly payment.

Ms. Lanoue's affidavit is likewise problematic in regard to the amount of taxes claimed to be in controversy. Ms. Lanoue states that a total of $4,250,000 of sales and property taxes are in dispute. (Lanoue Aff. ¶¶ 12-13). The Complaint raises a closer call because the Plaintiff claims that the taxes are both "unnecessary and excessive." (Compl. ¶ 20). But the Plaintiff next claims that "even if such taxes are remitted to the appropriate governmental authorities, the full amount of such taxes collected is not remitted." (Compl. ¶ 20). Thus, the Plaintiff apparently concedes that it is not claiming funds actually remitted to the government. (Compl. ¶ 27(k)) (alleging

Defendants' liability for "misrepresenting that the full amount of the tax charges were legitimate and were actually being paid to the appropriate governmental agency."). Thus, a proper measure of the taxes in dispute would not be the total amount of taxes collected, but only the difference between the taxes collected and the funds remitted to the government.

Given that the Defendants include a significant (yet unknown) portion of undisputed monies in its $9,125,000 calculation, its "best estimates" of potential liability are overreaching and too rudimentary to satisfy its burden. Without further detailed evidence by the Defendants, the Court should heed the Eleventh Circuit's caution that "the existence of jurisdiction should not be divined by looking to the stars." Lowery, 483 F.3d at 1215. In sum, while the Defendants' affidavit provides some indication of potential damages, it does not meet the "heavy burden" of showing beyond a legal certainty that damages will exceed $5,000,000. Burns, 31 F.3d at 1096.

The Court notes that various district courts in this Circuit have denied motions to remand under CAFA. See, e.g., Senterfitt v. SunTrust Mortgage, Inc., 385 F. Supp. 2d 1377 (S.D. Ga. 2005) (accepting defendant's uncontradicted estimate of amount in controversy exceeding $5,000,000); Scott v. Ing Clarion Partners, LLC, 2006 WL 3191184 (N.D. Ga. 2006) (concluding that amount in controversy exceeded

$5,000,000 in case alleging unspecified improper redecorating fees where court could readily ascertain potential damages); Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., 455 F. Supp. 2d 1323 (M.D. Ala. 2006) (accepting defendants' own declarations that amount in controversy is met under CAFA where plaintiff did not specify damages). However, all of these cases were decided before Lowery, which tightened the permissible evidence considered and tightened removal generally under CAFA.

The request for attorney's fees is denied. Given the weight of district court cases granting removal in the Eleventh Circuit before Lowery, the Court finds that the Defendants possessed an objectively reasonable basis for removal under CAFA. See Martin v. Franklin Capital Corp., 546 U.S. 132 (2005) ("[A]ttorney's fees should not be awarded under § 1447(c) when the removing party has an objectively reasonable basis for removal."). Although the Defendants presented insufficient evidence to satisfy the legal certainty standard, the Defendants were entitled to test the bounds of Lowery and CAFA in this class action setting.

## IV. CONCLUSION

For the reasons set forth above, the Plaintiff's Motion to Remand [Doc. 11] is GRANTED.

SO ORDERED, this 21 day of September, 2007.

                                  /s/Thomas W. Thrash  
                                  THOMAS W. THRASH, JR.  
                                  United States District Judge